**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 5, 2024

S24A0004.  CRARY v. CLAUTICE et al.

COLVIN, Justice.

In this case, the trial court granted Appellant Allison Crary's petition to set aside and revoke a final consent order, which had granted grandparent visitation rights under OCGA § 19-7-3 to Appellees Khristel Clautice and Frank Clautice, the maternal grandparents of Appellant's minor child. On appeal, Appellant does not challenge the trial court's ruling in her favor as to the final consent order but challenges three other orders from the revocation proceeding: an order denying Appellant's motion to declare unconstitutional the grandparent visitation statute, OCGA § 19-7-3; an order denying Appellant's motion for a contempt citation against Appellees; and an order denying Appellant's motion for attorney fees and expenses. As explained below, we dismiss as moot

the portion of Appellant's appeal that challenges the constitutionality of the grandparent visitation statute, and we affirm the trial court's orders denying Appellant's contempt motion and motion for attorney fees and expenses.

1. In 2017, Appellant was granted sole legal and physical custody of her minor child, and the father of Appellant's minor child was granted visitation rights. Appellees filed a petition for grandparent visitation, and, on March 16, 2022, the trial court entered a final consent order ("Grandparent Visitation Order"), which permitted Appellees to visit with Appellant's minor child pursuant to an agreed-upon visitation schedule.

On November 16, 2022, Appellant filed a petition asking the trial court to set aside and revoke the Grandparent Visitation Order, to issue a citation of contempt against Appellees for their failure to comply with the Grandparent Visitation Order, to declare OCGA § 19-7-3 facially unconstitutional and unconstitutional as applied, and to award Appellant attorney fees and expenses.

Appellant also filed a separate motion to declare the

2

grandparent visitation statute unconstitutional. Appellant argued that the grandparent visitation statute was unconstitutional because it "fails to provide[,] and Georgia appellate decisions do not set forth[,]" (1) who has the burden of proof when a parent seeks to revoke a grandparent visitation order, (2) whether proof by clear and convincing evidence that a child would be harmed absent visitation is required for a grandparent to obtain visitation or for the court to deny a petition to revoke visitation, (3) whether "good cause" for revoking grandparent visitation is shown if there is an "absence of a finding of harm," and (4) whether courts are prevented from granting or required to revoke grandparent visitation where the child lives with both parents. Based on her constitutional arguments, Appellant asked the trial court to vacate the Grandparent Visitation Order and "declare OCGA § 19-7-3 facially unconstitutional and [unconstitutional] as applied here."

After Appellees answered the petition, the trial court held a hearing on Appellant's petition. The parties made arguments at the hearing but did not present any evidence or testimony.

On December 5, 2022, the court entered an order summarily denying Appellant's motion to declare OCGA § 19-7-3 unconstitutional. And on December 12, 2022, the court entered an order that "set aside and vacated" the Grandparent Visitation Order. In short, the court concluded that "the Grandparent Visitation Order contain[ed] nonamendable defects which appear[ed] on the face of the record and the pleadings" because the father had not been joined as a necessary party under OCGA § 9-11-19 (a) (providing for joinder of indispensable parties), and because the court had failed to make certain factual findings by clear and convincing evidence, as required by OCGA § 19-7-3 (c) (1) (providing that "the court may grant . . . reasonable visitation rights if the court [makes certain findings] by clear and convincing evidence," and requiring courts to "make specific written findings of fact in support of its rulings").

On January 30, 2023, Appellant filed a "Second Motion for an

Award of OCGA § 19-7-3 Attorney's Fees and Expenses."[1] Appellant argued that attorney fees and expenses were warranted under OCGA § 9-15-14 (a) and (b) because Appellees had defended an action that lacked substantial justification, choosing to file "their objections and answers" to Appellant's petition when they instead "should have conceded that the order at issue should be set aside."[2]

On May 31, 2023, the court summarily denied the motion for attorney fees and expenses, stating that it did so "[a]fter careful consideration of the motion." The same day, the court issued an order denying Appellant's motion for a citation of contempt. In that order, the court stated that "[t]he parties and their respective

---

[1] While the record does not contain a "first" motion for attorney fees and expenses, Appellant's petition seeking to vacate the Grandparent Visitation Order sought attorney fees and expenses.

[2] OCGA § 9-15-14 provides that, in a civil action, a court can award attorney fees and expenses if a "party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position," id. § 9-15-14 (a), or if the court makes a finding "that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification[,] or that the action, or any part thereof, was interposed for delay or harassment, or . . . that an attorney or party unnecessarily expanded the proceeding by other improper conduct," id. § 9-15-14 (b).

counsel [had] com[e] before the [c]ourt" for a hearing on Appellant's petition seeking revocation of the Grandparent Visitation Order and a citation of contempt, and that, "[a]fter careful consideration of the testimony and evidence heard at the hearing, this [c]ourt does not find willful or intentional contempt by the [Appellees]." Appellant then timely filed a notice of appeal directed to this Court.

2.    On appeal, Appellant first argues that the trial court erred in failing to declare the grandparent visitation statute facially unconstitutional and unconstitutional as applied. In particular, Appellant challenges the constitutionality of the legal standards for granting visitation rights to a grandparent under OCGA § 19-7-3 (c) (1) and for revoking visitation rights that have previously been granted to a grandparent under OCGA § 19-7-3 (c) (2).[3] According to

---

[3] In relevant part, subsections (1) and (2) of OCGA § 19-7-3 (c) provide:

(1)    Upon the filing of an original action or upon intervention in an existing proceeding under subsection (b) of this Code section, the court may grant any family member of the child reasonable visitation rights *if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation*. . . . In considering whether the health or

6

Appellant, these legal standards fail to adequately protect parents' "fundamental liberty interests" in "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (II) (120 SCt 2054, 147 LE2d 49) (2000).

We conclude, however, that Appellant's constitutional challenges are moot. "Mootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim." *In the Interest of M. F.*, 305 Ga. 820, 820 (828 SE2d 350) (2019)

---

welfare of the child would be harmed without such visitation, the court shall consider and may find that harm to the child is *reasonably likely to result* when, prior to the original action or intervention:
> (A)  The minor child resided with the family member for six months or more;
> (B)  The family member provided financial support for the basic needs of the child for at least one year;
> (C)  There was an established pattern of regular visitation or child care by the family member with the child; or
> (D)  Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.
> The court shall make specific written findings of fact in support of its rulings.
> (2)  . . . . After visitation rights have been granted to any grandparent, the . . . parent of the child may petition the court for revocation or amendment of such visitation rights, for *good cause shown*, which the court, in its discretion, may grant or deny . . . .

(Emphasis supplied.)

7

(citation and punctuation omitted). "When the resolution of a case would be tantamount to the determination of an abstract question not arising upon existing facts or rights," and "[w]hen the remedy sought in litigation no longer benefits the party seeking it, the case is moot and must be dismissed." *McAlister v. Clifton*, 313 Ga. 737, 738 (1) (873 SE2d 178) (2022) (citation and punctuation omitted).

Here, Appellant's constitutional challenges to the grandparent visitation statute are moot because a reversal of the trial court's order denying Appellant's request to declare the statute unconstitutional "would have no practical effect on the underlying controversy." *Knox v. State*, 316 Ga. 426, 427-428 (888 SE2d 497) (2023) (citation and punctuation omitted). The trial court already ruled in Appellant's favor when it "set aside and vacated" the Grandparent Visitation Order on other grounds. And we "h[ave] no province to determine whether or not [the] statute, in the abstract, is valid." Id. (citation and punctuation omitted).

Appellant argues that a declaration regarding the constitutionality of the grandparent visitation statute is

8

nevertheless authorized here because "she remains in a position of uncertainty with respect to her child and her parents," "[a]ll parenting decisions and all personal decisions she makes henceforth will require consideration of the impact, if any, on that ever lurking, ever threatening grandparent visitation action authorized by OCGA § 19-7-3," and she "lives in fear that she may be served with a summons and petition for grandparent visitation."

Appellant is correct that "[a] declaratory judgment is authorized when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest." *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999) (citation and punctuation omitted). But "the relief sought by a plaintiff must have some immediate legal effect on the parties' conduct, rather than simply burning off an abstract fog of uncertainty," because "courts may not properly render advisory

9

opinions." *City of Atlanta v. Atlanta Independent School System*, 307 Ga. 877, 880 (838 SE2d 834) (2020). Appellant's request for declaratory relief here does not meet that standard because she asserts only abstract uncertainty over unspecified parenting decisions and "has not articulated any future conduct upon which this Court's resolution" of her constitutional challenges depend. Id.

Nor does Appellant's stated fear of similar litigation in the future establish that the constitutional issues she raises avoid mootness on the basis that they are "capable of repetition yet evade[ ] review." *McAlister*, 313 Ga. at 740 (1). The fact that Appellees could file a new petition for grandparent visitation or that Appellant might initiate a new revocation proceeding if Appellees are again granted visitation rights does not show that Appellant's constitutional challenges would evade review. To the contrary, Appellant, like any parent, could raise her constitutional challenges to the statutory standards for granting or revoking grandparent visitation in a new action for grandparent visitation, if one is filed, or in a new petition to revoke grandparent visitation, if visitation is

ordered in the future. See id. ("While the question of the constitutionality of the equitable caregiver statute may well be raised again, there is no reason to believe that it will evade review. Any time a person seeks custody or visitation pursuant to the equitable caregiver statute, the opposing party may challenge the constitutionality of the statute and the court may consider it . . . ."). Accordingly, we dismiss as moot the portion of Appellant's appeal challenging the trial court's denial of Appellant's request for a declaration that the grandparent visitation statute is unconstitutional.

3. Next, Appellant challenges the trial court's denial of her motion to hold Appellees in contempt. "Trial courts have broad discretion in ruling on a motion for contempt, and the trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it." *Horn v. Shepherd*, 292 Ga. 14, 17 (4) (732 SE2d 427) (2012) (citation and punctuation omitted). "In order for one to be held in contempt, there must be a willful disobedience of the court's decree or judgment." *Knott v. Knott*, 277 Ga. 380, 381 (1) (589

11

SE2d 99) (2003) (citation and punctuation omitted).

Here, the trial court ruled that, "[a]fter careful consideration of the testimony and evidence heard at the hearing, this [c]ourt does not find willful or intentional contempt by the [Appellees]." Appellant contends that this ruling contains an implicit finding that the parties presented testimony and evidence at the hearing, and that this implicit finding was erroneous because no testimony or evidence was presented at the hearing. But even assuming without deciding that these contentions are correct, they do not establish that the trial court abused its discretion in denying Appellant's contempt motion. As Appellant concedes, no evidence was presented at the hearing to support a contempt finding. And the record does not indicate that the court prohibited Appellant from introducing evidence in support of her motion. Accordingly, the trial court did not abuse its discretion in concluding that a contempt citation was unwarranted. See *Weaver v. Weaver*, 242 Ga. 327, 328-329 (3) (249 SE2d 36) (1978) (holding that "the judge did not abuse his discretion in refusing to hold the former husband in contempt" where "[t]he

12

judge did not refuse to hear evidence on the issue of contempt, but none was offered by either party"). See also *Killingsworth v. Killingsworth*, 286 Ga. 234, 237 (3) (686 SE2d 640) (2009) (holding that "there was ample evidence in the record to support the court's finding that [an ex-wife] did not willfully disobey the provision of the divorce decree requiring her to leave the marital residence in the same condition" in part because "[t]here [was] no evidence in the record that [she] did anything to damage the marital residence").

4.    Finally, Appellant argues that the trial court abused its discretion in denying her motion for attorney fees and expenses because the court ruled on the motion without holding a hearing and taking evidence, and because the court considered only Appellant's motion, not the entire record, in ruling on the motion. We disagree.

Contrary to Appellant's argument, the trial court was not required to hold a hearing or take evidence before denying the motion for attorney fees and expenses. As we have explained, "[a] hearing is required in order to *enter an award* of attorney fees . . . . because an oral hearing gives the party opposing attorney fees an

opportunity to confront and challenge testimony with regard to the need for, and value of, legal services." *Evers v. Evers*, 277 Ga. 132, 132 (1) (587 SE2d 22) (2003) (emphasis supplied). "But this rationale does not apply unless attorney fees are to be awarded," meaning that a hearing is not required "[i]f attorney fees are not to be awarded." Id. Here, the trial court was not required to hold a hearing or take evidence before ruling on Appellant's request for attorney fees and expenses because the request was denied. See id.

Appellant's argument that the court failed to consider the entire record in ruling on the motion likewise fails. Appellant appears to argue that the trial court confined its analysis to the four corners of her motion because the court said it was denying the motion "[a]fter careful consideration of the motion." But this statement indicates only that the court considered the motion, not that it failed to consider the rest of the record. Moreover, Appellant's motion highlighted portions of the record that Appellant believed supported her motion for attorney fees and expenses. Because the court stated that it had carefully considered the motion, it

14

"presumably took this information . . . into account." *Driver v. Driver*, 292 Ga. 800, 804-805 (4) (741 SE2d 631) (2013) (noting that we generally presume that a trial court considered "all the evidence presented"). Accordingly, Appellant has not shown that the trial court abused its discretion in denying her motion for attorney fees and expenses.

*Judgment affirmed in part and appeal dismissed in part. All the Justices concur.*